# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| GREGORY HOLDEN, | * | |
| Petitioner, | * | |
| v. | * | Civil Action No. PWG-17-1163 |
| FRANK BISHOP and THE ATTORNEY GENERAL OF THE STATE OF MARYLAND, | * * | |
| Respondents. | * | |

\*\*\*

## MEMORANDUM OPINION

Petitioner Gregory Holden filed a 28 U.S.C. § 2254 habeas corpus Petition attacking his 2014 convictions for first degree murder and openly carrying a dangerous weapon with intent to injure. ECF No. 1; *Holden v. State*, No. 1713, Sept. Term 2014, slip op. at 18 (Md. Ct. Spec. App. Mar. 15, 2016) (unreported) ("Md. Ct. Spec. App. Op."), ECF No. 3-5 (starting at 17). Respondents filed an Answer, and Holden filed a Reply. ECF Nos. 3, 4. Upon review, the Court finds no need for an evidentiary hearing. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts*; Loc. R. 105.6 (D. Md. 2016); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (Petitioner not entitled to hearing under 28 U.S.C. § 2254(e)(2)). For the reasons set forth herein, the Petition IS DENIED and DISMISSED with prejudice.

## FACTUAL & PROCEDURAL HISTORY

On June 25, 2012, Holden was indicted in the Circuit Court for Baltimore City on charges of first degree murder and openly carrying a dangerous weapon with intent to injure. State Ct. Docket 1, ECF No. 3-1. These charges stemmed from the 2011 stabbing death of Holden's neighbor, Dwight Jones. Prior to trial, Holden filed numerous motions, two of which are relevant to this habeas petition. First, Holden moved to suppress evidence recovered from an

apartment associated with him (his mother's apartment), arguing that the search warrant used to gain entry into the apartment was invalid because the officers gained entry before they obtained the warrant, and its supporting affidavit lacked probable cause. Sept. 2, 2014 Mot. Hr'g Tr. 8-18, ECF No. 3-2; *see* Md. Ct. Spec. App. Op. 6-7 (text of affidavit). The Circuit Court denied this motion. Sept. 2, 2014 Mot. Hr'g Tr. 18.

Second, Holden moved to exclude evidence that the State intended to present at trial regarding his DNA profile, which was obtained by law enforcement during the course of an unrelated 2006 criminal investigation. *Id.* at 27, 62. Holden argued that the DNA profile should have been expunged because Holden was not charged in the 2006 investigation. *Id.* at 27, 62-66. Further, Holden contended that the DNA profile was not probative, as it neither included nor excluded him as a contributor of DNA found in an apartment near the crime scene. *Id.* at 63. The Circuit Court granted the motion in part, prohibiting the State from explaining the circumstances surrounding the collection of Holden's DNA in 2006, but otherwise denying Holden's motion and allowing the State to use the DNA profile. *Id.* at 65.

Following a jury trial, Holden was convicted of both charges. On September 10, 2014, he was sentenced to life imprisonment for the murder conviction and a consecutive term of three years' imprisonment for the weapons conviction. State Ct. Docket 1-2. Holden filed a direct appeal with the Maryland Court of Special Appeals arguing, among other grounds not relevant to this petition, that "[t]he trial court erred by failing to grant Mr. Holden's Motion to Suppress the items recovered from the apartment where he resided," and "[t]he trial court erred in admitting evidence at trial relating to Mr. Holden's DNA profile." Md. Ct. Spec. App. Op. 1 n.1. In an opinion issued on March 15, 2016, the Court of Special Appeals affirmed Holden's convictions. *Id.* at 2.

Regarding the suppression issue, the Court of Special Appeals rejected Holden's argument that the affidavit used to obtain the search warrant contained insufficient probable cause. The Court concluded:

> [T]he issuing judge had a substantial basis to conclude that the search warrant for apartment 701 South was supported by probable cause. The warrant affidavit related that the responding officers found Jones's dead body, in his apartment (704 South). He had sustained multiple stab wounds. Inside that apartment, the police found "suspected blood and signs of a struggle." A blood trail led from that apartment to the apartment complex hallway. Witnesses advised that Jones had been in apartment 707 South, drinking with [Holden] and several other people; that Jones, [Holden], and [Holden's aunt] went to Jones's apartment, and that, early on the morning of December 10, 2011, Jones had expressed fear of [Holden]. Specifically, he was fearful because he had had to throw [Holden] out of his apartment because he had caught him "going through his drawers." Jones told White [who lived in 707 South] about that and then returned to his own apartment. Later that morning, he was found dead in his apartment. Officers also learned that Sandra, [Holden]'s mother, resided in apartment 701 South, and that a sign in sheet dated December 10, 2011 showed a "G. Holden" (the appellant) signing in and "utilizing the tenant/address of 701 S.—S. Holden." That apartment was on the same floor as the apartment in which Jones was found deceased.
>
> Because there was a blood trail leading from Jones's apartment to the common hallway, a reasonable inference could be drawn that, at a minimum, blood evidence could be found in other locations on the same floor, and most likely in 701 South where the person with whom Jones had just had a dispute and about whom Jones had expressed fear was living.

*Id.* at 9-10. The court concluded that it did not need to "determine whether the good faith exception to the exclusionary rule applie[d] because the issuing judge had a substantial basis for finding probable cause to search apartment 701 South." *Id.* at 10.

As to the DNA profile issue, the Court of Special Appeals rejected Holden's argument that the evidence was irrelevant and inadmissible, explaining that "[i]n light of [Holden's trial counsel's] repeated suggestions that the police investigation was lacking, evidence that the appellant's DNA profile was compared with the DNA evidence at the scene, while ultimately inconclusive, was relevant to show that the police conducted a thorough investigation." *Id.* at 14-

15. Further, the Court of Special Appeals was not persuaded by Holden's challenge regarding the absence of evidence of the chain of custody of the 2006 DNA profile. The Court explained that in Holden's case, "chain of custody is not pertinent, because the State did not introduce the appellant's 2006 DNA sample, nor did the State present evidence that the appellant's [2006 DNA] sample matched the physical evidence taken in this case." *Id.* at 16-17. Finally, the Court of Special Appeals noted that, even if it had concluded that the DNA evidence should have been excluded as irrelevant or for lack of chain of custody evidence, such error would be harmless beyond a reasonable doubt because the DNA profile evidence neither included nor excluded Holden as the source of the DNA in question. *Id.* at 15, 17.

Holden filed a petition for a writ of certiorari with the Maryland Court of Appeals, raising multiple grounds including the suppression of evidence seized via the allegedly flawed search warrant and the use of Holden's DNA profile, as discussed above. Cert. Pet. 5-14, ECF No. 3-5 (starting at 1); Cert. Pet. Supp. 11-16, ECF No. 3-6. On June 24, 2016, the Court of Appeals denied the petition. Md. Ct. App. Order, ECF No. 3-5 (at 43). Holden did not seek review by the United States Supreme Court; thus, his convictions became final on September 22, 2016, when the time for seeking such review expired. *See* Sup. Ct. Rule 13.1 (petition for writ of certiorari to be filed no later than 90 days of judgment from which review is sought). He did not seek post-conviction relief from the State court.

## CLAIMS FOR RELIEF

On April 20, 2017,[1] Holden filed this § 2254 petition. He asserts that habeas relief is warranted because:

---

[1] Holden avers that this is the date he mailed the petition. Pet. 33. Because Holden is incarcerated, he is entitled to the benefit of the prison mailbox rule, which provides that a prisoner's filing of a court document is complete on the date he or she gives the document to prison officials for mailing. *See Houston v. Lack*, 487 U.S. 266, 270-72 (1988).

4

[1] The [trial] court erred by failing to grant Gregory Holden['s] motion to suppress the items recovered from the apartment where he resided.
   A. The issuing judge lacked a substantial basis for finding probable cause to search the residence.
   B. The good faith exception to the exclusionary rule does not apply.
. . .
[2] The trial court erred in admitting evidence at trial relating to Mr. Holden's (DNA) profile.

Pet. 9, 27. In support of these grounds, Holden repeats, substantially verbatim, the arguments that he raised in his petition to the Maryland Court of Appeals for a writ of certiorari. *Compare* Pet. 10-27, *with* Cert. Pet. 5-15; *compare* Pet. 27-31, *with* Cert. Pet. Supp. 12-16.

## DISCUSSION

The Court only will consider an application for writ of habeas corpus based on alleged violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute at 28 U.S.C. § 2254 sets forth a highly deferential standard for evaluating state-court rulings. *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005). The standard is "difficult to meet" and requires that federal courts give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted); *see also White v Woodall*, 134 S. Ct 1697, 1702 (2014) (to obtain relief under § 2254, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement"). A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

## A. Preliminary matters

Because Holden filed his § 2254 petition within one year of his convictions becoming final, the petition is timely under 28 U.S.C. § 2244(d)(1)(A). Moreover, as the Respondents acknowledge, Holden has satisfied the exhaustion requirement set forth in § 2254(b)(1)(A), (c). Resp. 5-6; *see also Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000). Here, Holden exhausted both claims presently before this Court by raising them in his direct appeal to the Maryland Court of Special Appeals and his petition to the Maryland Court of Appeals for a writ of certiorari. Cert Pet. 5-15, 18 n.1; Cert. Pet. Supp. 12-16; *see* Md. Code Ann., Cts. & Jud. Proc. §§ 12-201 12-301, 12-308. Accordingly, it is appropriate to turn to the substance of the petition.

## B. Motion to Suppress

First, Holden argues that habeas relief is warranted because the trial court erred in denying his motion to suppress evidence that was seized by the use of an allegedly invalid search warrant. The law concerning Fourth Amendment claims in federal habeas corpus proceedings is well established. "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that the evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976) (footnotes omitted). Although *Stone* did not define the phrase "full and fair opportunity to litigate," the Fourth Circuit held:

> [A] district court, when faced with allegations presenting Fourth Amendment claims, should, under the rule in *Stone v. Powell, supra*, first inquire as to whether or not the petitioner was afforded an opportunity to raise his Fourth Amendment claims under the then existing state practice. This may be determined, at least in this Circuit, from the relevant state statutes, the applicable state court decisions, and from judicial notice of state practice by the district court.

> Second, ... when the district court has made the 'opportunity' inquiry, it need not inquire further into the merits of the petitioner's case, when applying *Stone v. Powell, supra,* unless the prisoner alleges something to indicate that his opportunity for a full and fair litigation of his Fourth Amendment claim or claims was in some way impaired.

*Doleman v. Muncy,* 579 F.2d 1258, 1265 (4th Cir. 1978) (internal citations omitted).

The record in this case establishes that Holden had ample opportunity to—and did in fact—litigate his Fourth Amendment challenge in the state courts. The trial judge thoroughly considered the suppression motion and the supporting arguments presented by Holden's counsel. Sept. 2, 2014 Mot. Hr'g Tr. 8-18. In his brief to the Maryland Court of Special Appeals, Holden challenged the trial court's ruling on the suppression motion. Appellant Br.12-21, ECF No. 3-3. That court also rejected the suppression argument. Md. Ct. Spec. App. Op. 5-10. Finally, in his pro se petition for a writ of certiorari to the Maryland Court of Appeals, Holden challenged the validity of the search warrant for a third time. The Court of Appeals considered the argument,[2] but apparently found it meritless, as the Court declined to grant the requested writ and summarily dismissed Holden's case. Md. Ct. App. Order.

Because the record demonstrates that Holden presented the argument during every level of state court review, this Court finds that Holden clearly had a full and fair opportunity to litigate the validity of the search warrant and possible suppression of the evidence in the Maryland courts. Accordingly, under *Stone,* Holden's Fourth Amendment claims are barred from consideration here. *See Stone,* 428 U.S. at 494; *Doleman,* 579 F.2d at 1265.

---

[2] Although Holden also submitted a petition for writ of certiorari through counsel that did not raise this claim, ECF No. 3-7, it is obvious from the record that the Court of Appeals received and considered both petitions. *See* Md. Ct. App. Order, ECF No. 3-5 (at 43) (stating that the Court of Appeals considered "the petitions and the supplements," indicating that the court evaluated multiple filings).

7

## C. DNA Profile

Next, Holden contends that admission of his DNA profile amounts to error "because the jury may have considered Holden's DNA profile for Holden's conviction in this case. The fact of age [of Holden's DNA sample] and relevance is hidden in this case. The possibility of tampering compromises Holden's (DNA) profile." Pet. 32 (capitalization altered). The scope of this Court's review of Holden's DNA claim is quite limited.

> [I]n considering federal habeas corpus issues involving state evidentiary rulings, [federal courts] do not sit to review the admissibility of evidence under state law unless erroneous evidentiary rulings were so extreme as to result in a denial of a constitutionally fair proceeding. It is only in circumstances impugning fundamental fairness or infringing specific constitutional protections that a federal question is presented.

*Barbe v. McBride*, 521 F.3d 443, 452 (4th Cir. 2008) (internal citation and quotation marks omitted); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *Howard v. O'Sullivan*, 185 F.3d 721, 723-24 (7th Cir. 1999) ("To be of constitutional import, an erroneous evidentiary ruling must be so prejudicial that it compromises the petitioner's due process right to a fundamentally fair trial. This means that the error must have produced a significant likelihood that an innocent person has been convicted." (internal citations omitted)). Thus, Holden's argument that irrelevant evidence was admitted at trial is, without more, insufficient to give rise to a federal habeas claim. For irrelevant evidence to amount to a constitutional violation, Holden would have to demonstrate that the inadmissible evidence was so prejudicial to the jury's deliberations that it effectively prevented him from receiving a fair trial.

Holden fails to demonstrate that the DNA profile evidence introduced at trial had such a prejudicial impact. As noted by the Court of Special Appeals, even assuming admission of the DNA profile was irrelevant, such evidence was harmless beyond a reasonable doubt because it neither included nor excluded Holden as the possible source of the unidentified DNA at issue. Md. Ct. Spec. App. Op. 15, 17. Indeed, despite his wholly speculative arguments that the neutral evidentiary value of the DNA profile could have swayed the jury's verdict,[3] Holden, at times, acknowledges the insignificance of the DNA profile to the case as a whole. For example, in his § 2254 petition, Holden repeats the argument that he made to the trial court that "they have my [DNA] profile, obviously, and they're saying I can't be included [and] I can't be excluded. So that's evidence of nothing." Pet. 28. In his reply brief, Holden states that "the DNA does not connect me to the murder." Pet'r's Reply 2 (capitalization altered). Because the Court finds no basis for concluding that the admission of the DNA profile evidence "impugn[ed] [the] fundamental fairness" of Holden's trial or otherwise "infring[ed] specific constitutional protections," *Barbe*, 521 F.3d at 452, this claim is rejected.

## CONCLUSION

For the above reasons, the Court concludes that the Petition provides no grounds for habeas corpus relief. Accordingly, the Petition is DENIED and DISMISSED.

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U. S.C. § 2253(c)(2). The petitioner "must

---

[3] According to Holden, because he could neither be included nor excluded as the source of the DNA in question, "jurors would likely speculate as to why Holde[n] could not be excluded from this other profile. They would be left to wonder why, if the state had Holden's profile, they would be unable to quantifiably rule him out as a contributor to that mixture." Pet. 31. There is no objective evidence to suggest that jurors "would likely" draw a detrimental inference from the DNA profile instead of, for example, questioning why the state, which bore the burden of proving Holden's guilt beyond a reasonable doubt, could not say with certainty that Petitioner was the source of the DNA.

Moreover, if the DNA profile were excluded, the state would still have been able to present evidence that the victim's DNA was found on an item in an apartment connected to Holden, and that this DNA was mixed with DNA from an unidentified person. It is unclear how this scenario is less prejudicial to Holden, as the jury would also be faced with the same proposition—that DNA was found which might or might not be Holden's DNA.

demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Application of this standard to the issues raised in this case leads to the inescapable conclusion that there has been no substantial showing of the denial of a constitutional right, nor would reasonable jurists find this Court's conclusions regarding the claims raised debatable. Holden's search warrant claim is clearly barred and it is clear that the admission of the DNA evidence did not impugn the fairness of the trial. Accordingly, a certificate of appealability shall not issue. *See* 28 U.S.C. § 2253(c)(2).[4]

A separate Order follows.

_11/21/2017_
Date

_Paul W. Grimm_
Paul W. Grimm
United States District Judge

---

[4] Denial of a certificate of appealability in the district court does not preclude Holden from requesting one from the court of appeals.